[Lucas (6th) Circuit Court, July 3, 1903.]

GEORGE F. C. KLOEPPINGER v. JOSEPH GRASSER.

1. PRESUMPTION WHERE BILL OF EXCEPTIONS IS SIGNED AND FILED THE SAME DAY.

Where the record does not show which of two events first transpired it will be presumed that they occurred in such order as will secure the legality and regularity of the proceedings. Hence, where a bill of exceptions was signed and filed on the same day, in the absence of evidence to the contrary, it will be presumed to have been filed with the clerk before bing signed by the trial judge, as required by Sec. 5301 Rev. Stat.

2. SECTION 5301 REV. STAT. CONSTRUED.

That clause of Sec. 5301 Rev. Stat., which provides that "the clerk of the

court, at a time not less than twelve nor more than fifteen days, from the overruling of a motion for a new trial shall transmit to the trial judge or judges, the bill together with all objections and amendments if any, filed thereto," is not, so far as the earlier limitation of fifty-two days is concerned, a jurisdictional matter, but is one which the court allowing the bill of ex-, ceptions may insist upon or not at his pleasure. Hence, a trial judge in his discretion, all parties to a bill of exceptions being satisfied with it, may sign it before the expiration of the fifty-second day after the overruling of a motion for a new trial and the entry of judgment.

3. FACT OF SIGNING AND ALLOWANCE MUST APPEAR FROM BILL ITSELF.

Under Sec. 5302 Rev. Stat., as amended 96 O. L. 17, which provides that it shall not be necessary to make a journal entry of the settling allowance and signing of a bill of exceptions, a journal entry is not evidence of such facts, but they must appear upon the bill itself.

4. DATE OF DEBT AND FILING LIEN OF SUBCONTRACTOR FIX THE TIME OF THE OPERATION OF MECHANICS' LIEN STATUTES.

Where the indebtedness of the owner to the head contractor and the statement filed by the subcontractor with the owner in order to secure his lien upon money due the head contractor are of later date than April 18, 1902, notwithstanding the contract between the owner and the head contractor is of earlier date, the form of the subcontractor's statement is determined by the act of April 18, 1902, 95 O. L. 210, which repealed Sec. 3193 Rev. Stat., and such statement is not required to be under oath. Nor does such an application of this act give it a retroactive effect so as to render it unconstitutional.

5. SECTION 3197 REV. STAT. SAVES SUBCONTRACTOR'S REMEDY.

The right of the subcontractor to enforce, against the owner, his lien upon money due the head contractor is saved to him by Sec. 3197 Rev. Stat., although Sec. 3201, providing a specific remedy, was repealed by 95 O. L. 210.

6. NOT NECESSARY TO AVER OTHER CLAIMS IN PETITION.

The petition in an action by a subcontractor against the owner, to enforce his lien upon money due the head contractor, is not defective in that it fails to aver that there are no other claims on the fund; such fact may be interposed as a defense or by requiring an interpleader to bring in all parties having an interest in the fund.

7. HEAD CONTRACTOR, NOT A NECESSARY PARTY, WHEN.

Where the head contractor has assigned to a subcontractor all his rights against the owner, he is not a necessary party to an action against the owner by the subcontractor.

ERROR to Lucas common pleas.

**Wertman & Dickey,** for plaintiff in error:

The question relating to the signing of the bill of exceptions by the trial judge before the fifty-two days from the overruling of the motion for a new trial had elapsed, is not a jurisdictional question.

The statute of April 18, 1902, 95 O. L. 209 *et seq.,* is not retroactive in the constitutional sense. A retroactive statute is one that disturbs and invades vested rights. But in the case at bar, no vested right is disturbed. The plaintiff below furnished the material and performed the iron and tin work on the building, and Grasser, the owner, had the benefit of it. This is alleged in the petition and also that Arnsman, the principal contractor,

was insolvent, as Grasser then well knew, so that at the time when the notice was served upon Grasser, every principle of equity and fair dealing required him to guard and protect the rights of Kloeppinger, and this he had no right to ignore. He was bound in equity and good conscience to perform this duty. The statute cast no extra burden upon Grasser, and he had no moral right to pay to Arnsman and defraud Kloeppinger out of his money. Lewis v. McElvain, 16 Ohio 347; Johnson v. Bentley, 16 Ohio 97; Baugher v. Nelson, 9 Gill (Md.) 299; Cooley, Const. Lim. 358; Lawrence Ry. Co. v. Mahoning Co. (Comrs.) 35 Ohio St. 1.

As to the remedy under the act of April 18, 1902, 95 O. L. 209 *et seq.* McCullom v. Richardson, 12 Re. 440 (2 Handy 274); Copeland v. Manton, 22 Ohio St. 398, 403; Bullock v. Horn, 44 Ohio St. 420, 424, and 425 [7 N. E. Rep. 737].

**Seney & Johnson,** for defendant in error.

**PARKER, J.**

This is a proceeding brought to obtain the reversal of a judgment of the court of common pleas of this county. The parties stood upon the record in the court below as they do here. A petition was filed, in which Kloeppinger undertook to recover a judgment against Grasser on account of certain transactions, under favor of the provisions of the mechanics' lien law of Ohio. To this petition an answer was filed, making up certain issues. A jury was impaneled and a witness sworn on behalf of the plaintiff, and then objection was made to the introduction of any evidence on the ground that a cause of action was not stated in the petition, and the objection was sustained, the trial judge taking that view of the matter. Thereupon the court instructed the jury to return a verdict in favor of defendant; which was done, and upon that verdict a judgment was entered, a motion for a new trial having been overruled.

The first question presented is as to the validity of the bill of exceptions, it being apparent that a bill of exceptions is necessary to bring up the questions which the plaintiff in error seeks to present.

The motion for a new trial was overruled on March 12, 1903, and judgment was entered upon the same day, so that it is apparent that the cause, as to the bill of exceptions, comes under the provisions of the statute found in 96 O. L. 16. That statute, passed October 22, 1902, amends Sec. 5301 Rev. Stat., adds Sec. 5301a, 5301b Rev. Stat., and also amends Sec. 5302 Rev. Stat., repeals former Secs. 5301 and 5302 Rev. Stat., and contains a provision that after January 1, 1903, it shall apply to pending cases.

The bill of exceptions was signed upon March 23, 1903, which was eleven days after the overruling of the motion for a new trial and the

entering of judgment. It is contended by counsel for defendant in error that the bill of exceptions should be stricken from the files and not regarded.

First. Because it was not filed with the clerk before it was signed by the judge, as required by this act of October 22, 1902.

Second. Because it was signed by the judge before the time had arrived within which he might sign it; that is to say, that it was signed prematurely.

It is alleged that the judge was without jurisdiction in the premises until the arrival of a certain period provided by the statute; that he was as clearly without jurisdiction as he would have been had he undertaken to act after the expiration of the period.

Now as to the first point, that it was not filed before it was presented to the trial judge. Without passing upon whether that is important or essential, we observe that the bill of exceptions was signed on March 23, 1903, and was filed upon March 23, 1903, and we have no evidence in the record or otherwise as to which event first transpired, but the presumption in favor of the legality and regularity of the proceedings would, therefore, save the bill of exceptions against that objection. It would require us to assume that it was first filed, if it were necessary to indulge any presumption upon this question.

The other question arises upon the provisions of Sec. 5301 Rev. Stat., see 96 O. L. 16. After providing that the party excepting must reduce his exceptions to writing and file the same within forty days after the overruling of the motion for a new trial, or the decision of the court where a motion for a new trial is not filed, it provides that "thereupon the clerk shall forthwith notify the adverse party, or his attorney, of the filing of such bill." And it then proceeds:

"Within ten days, after such forty days, any other such party may file in the cause any objection or amendment he may propose to the bill. The clerk of said court, at a time not less than twelve, nor more than fifteen days, after forty days from the overruling of the motion for a new trial, shall transmit to the trial judge or judges, the bill, together with all objections and amendments, if any, filed thereto."

And that, counsel insists, means that not less than fifty-two days after the overruling of the motion for a new trial, nor more than fifty-five days after that time, the bill of exceptions must be transmitted by the clerk of the court to the trial judge.

And then Sec. 5301a Rev. Stat., see 96 O. L. 16, provides that the trial judge, upon receipt of the bill, shall endorse thereon when it was received by him, "and within five days after the receipt of the bill, and the

objections or amendments thereto, if any, to correct the bill if necessary and allow and sign the bill and immediately transmit or cause the same to be transmitted to the office of the clerk of the court." And there are certain other special provisions in the event of the absence of the judge.

I find in a journal entry of the date of the allowance and signing of the bill, to wit, March 23, 1903, the following:

"This day came the plaintiff and presented to the court his bill of exceptions herein, and it being shown to the court that the same has been presented to counsel for the defendant within the time limited by law and that the same has been approved by defendant's counsel, and the court being satisfied that the same is in all respects true and correct, allowed, signed and sealed the same, and orders that it be made a part of the record herein, but not to be spread at large thereon."

But, with respect to that, counsel for defendant in error urge that, no such journal entry being necessary (it not being provided for by the statute) we cannot consider it as evidence of the facts recited therein. The statute upon that subject is very different now from what it was before the act of October 22, 1902. Formerly it was necessary to have the allowance of the exceptions appear upon the journal. Whereas now, by Sec. 5302 Rev. Stat., 96 O. L. 16, it is provided:

"It shall not be necessary to cause an entry to be made upon the journal of the court of the settling, allowance and signing of any bill of exceptions; but the signature of the trial judge, or other judge mentioned in Sec. 5301a, allowing, settling and signing such bill, shall be sufficient evidence of such fact."

And we are inclined to think that the objection to the consideration of this journal entry as evidence of the facts stated in it, is well taken; that the evidence of what was done about filing it, presenting it to counsel and to the court and about allowing it, etc., should now appear upon the bill of exceptions itself. But, upon this bill of exceptions we find this endorsement, which, it is conceded by counsel for defendant in error, was placed there by them upon the date there stated: "Approved, March 23, 1903. Seney & Johnson, attorneys for defendant."

Still it is urged that that does not meet the objection here; that though counsel may have waived a limitation of time provided for in the statute for their examination of the bill of exceptions, they could not make any waiver that would be binding upon the court, and they could not make any indorsement that would confer jurisdiction upon the court, and they insist that it is a jurisdictional question, and that the court could not act upon the matter until after fifty-two days after the overruling of the motion for a new trial.

Lately we had a like question before us in Wood county, under Sec. 6565 Rev. Stat., as it appears in 93 O. L. 104, which is a statute providing for the taking of a bill of exceptions before justices of the peace. It reads as follows:

"In all cases before a justice of the peace, whether tried by jury or by the justice, either party shall have the right to except to the decisions of the justice upon any matter of law arising in the case. The party objecting to the decision must except at the time the decision is made, and if requested by the party objecting, time shall be given to reduce the exceptions to writing, but not more than ten days, nor less than five, beyond the date, or overruling of the motion for a new trial, or from the date on which the decision of the justice is rendered."

In the case presented to us the bill of exceptions was prepared and approved by opposing counsel and allowed by the justice before the expiration of five days; it was not done between the fifth and the tenth day, and it was insisted that that was premature; that the justice was without jurisdiction; that he must wait until the expiration of five days, since it is provided that the time fixed shall be not more than ten nor less than five days after certain action by the justice. We overruled that objection, being of the opinion that it was a limitation that the court allowing the bill of exceptions might insist upc or might not, at his pleasure; that it was not a jurisdictional matter at all. And we entertain the same view of the statute here under consideration, that the trial judge in his discretion, all the parties to the bill of exceptions being satisfied with it, may sign it before the expiration of the fifty-second day after the overruling of the motion for a new trial and the entry of judgment, and his action in the premises will be valid. The case is not like one of the expiration of the limitation of time, for instance, after the expiration of the fifty-fifth day, which by the rulings under the former law, left the court without jurisdiction.

So we overrule the motion to strike the bill of exceptions from the files.

This brings us to the consideration of the main question presented, i. e., whether the court erred in refusing to allow plaintiffs to submit evidence in support of the cause of action which they have undertaken to state in their petition.

In order that the question may be understood it will be necessary to read the petition.

"Plaintiff alleges that on or about the seventeenth day of February, 1902, the defendant, Joseph Grasser, entered into a written contract with one John V. Arnsman, as principal contractor, for the furnishing

of material and the construction by said Arnsman of the building known as the Bellview Park Pavilion, in the city of Toledo, Ohio, for which the 'said defendant was to pay the sum of $13,541.

"And in addition thereto, afterwards, at the request of the said defendant, said Arnsman did extra work and furnished extra material of the value of about $400.

"That on or about the first day of March, 1902, said John V. Arnsman, as such principal contractor, entered into a written contract with this plaintiff, by the terms of which this plaintiff agreed to furnish the material and to do the tin and galvanized iron work on said building; and for which said Arnsman agreed to pay this plaintiff the sum of $1,400, as soon as said work was completed, or in progress.

"That this plaintiff did, within a reasonable time thereafter, perform said contract upon his part in a good and workmanlike manner and to the full satisfaction of the architect of said building; that during the progress of said work, some time in the month of May, 1902, this plaintiff demanded of said Arnsman an estimate of the work done by him and the money due therefor; that said Arnsman, in pursuance of such demand, secured from the architect of said building an estimate of the material furnished and labor performed by this plaintiff, to the amount of about $1,000, and on said estimate the money was paid by said defendant to said Arnsman for this plaintiff, but no part of it was paid to this plaintiff. Thereupon about the twelfth day of June, 1902, this plaintiff notified the defendant in writing of all the facts above stated relating to the contract of this plaintiff with Arnsman, the demand made by the plaintiff, the estimate, the payment of the money to said Arnsman and the fact that this plaintiff had received no part of it; and then in the same writing notified said defendant to withhold from the money remaining unpaid upon his said contract with said Arnsman, the contract price for this plaintiff's labor and material on said building, the sum of $1,400, the same being for the tin and galvanized iron work.

"That said Arnsman, the principal contractor, did not within ten days thereafter, nor at any other time, in writing or otherwise, notify this defendant that he intended to dispute the claim of this plaintiff, but upon the other hand acquiesced in and consented to the correctness of the same; that said Arnsman was then wholly insolvent, as the said defendant well knew; that said defendant had at the time of receiving said notice remaining in his hands unpaid on said contract the sum of $3,500; that the work on the contract of this plaintiff was completed on June 25, 1902; and that on June 19, 1902, there was paid to this plaintiff on said contract,

by virtue of said notice, the sum of $500, and that no other or further sum has been paid thereon.

"That there remains due to this plaintiff thereon the sum of $900, together with interest thereon from June 25, 1902.

"That on the twenty-third day of October, 1902, said Arnsman gave to this plaintiff a written order on said defendant for the sum of $900, to be paid out of the money due on the contract price of said building; that the same was then duly presented by this plaintiff to said defendant for payment and payment thereof was refused by said defendant, although said contract with said Arnsman was fully performed and more than enough money remained in defendant's hands, due on said contract, to pay plaintiff's claim.

"Wherefore said plaintiff prays judgment against said defendant for said sum of $900 with interest thereon from June 25, 1902, and for costs of suit, and for such other and different relief as is just and equitable."

Now it will be observed that the action is by a subcontractor who undertakes to recover from the owner of the building a part of the money due to the head contractor, a proceeding under the mechanics' lien law of the nature of a garnishee process.

To this petition an answer was filed, denying liability, upon various grounds. This answer need not be noticed, because of the form in which the question is presented. The ruling of the court below proceeded upon the theory that an affidavit to the statement furnished by the subcontractor was required by the statute upon the subject; that Sec. 3193 Rev. Stat., as amended April 13, 1894, or as it stood prior to that day, required a sworn itemized statement, and applied to the plaintiff's case. It will be observed that the petition does not aver that the statement furnished was sworn to. The statute in force did not require a sworn statement. The statute in force was passed on April 18, 1902, and is found in 95 O. L. 210, 211. But the theory of the court and of counsel for defendant seems to have been that since the contracts between Grasser and the principal contractor and between the plaintiff and the principal contractor were of earlier date than April 18, 1902, therefore the act of April 18, 1902, did not apply. They seem to have proceeded upon the theory that if it were made to apply it would be given a retroactive effect that would not be admissible and would make it unconstitutional. Though the contracts were of earlier date than April 18, 1902, the notice was of later date; the indebtedness of the owner to the head contractor was of later date, and so this statute of April 18, 1902, would not act upon the contract if given the effect asked for by the plaintiff. It acts upon the state of facts at the time existing. In effect it is not retroactive. Giving to it that effect does not make it

obnoxious to the constitutional provision on the subject of retroactive laws. As I have said, the statute provides for a remedy in the nature of a garnishee process—finding A indebted to B and B indebted to C, it enables C to reach a fund due to B in the hands of A. That is the result of the process of garnishment, and it is the effect of these provisions of the mechanics' lien law with respect to the remedies of subcontractors. But even assuming that the giving of the statute effect and making it applicable to this case would make it in some respects retroactive in its operation, it would not necessarily be unconstitutional for that reason, and it would not necessarily be wrong to give it that operation. In Cuyahoga Falls Real Est. Assn. (Tr.) v. McCaughy, 2 Ohio St. 153, it is said:

"Retrospective laws that violated no principle of natural justice, but that, on the contrary, were in furtherance of equity and good morals, were not forbidden by the constitution of 1802."

And the same, of course, may be stated of the constitution of 1852. In support of this is cited Lewis v. McElvain, 16 Ohio 347 and Johnson v. Bentley, 16 Ohio 97, Acheson v. Miller, 2 Ohio St. 203. Another case which has been referred to on this subject is Baugher v. Nelson, 9 Gill (Md.) 299, where it is said, amongst other things:

"But the vested rights thus guarded are those only to which a party may adhere, and upon which he must insist without violating any principle of sound morality; there can be no vested right to do a wrong, or violate a moral duty, or resist the performance of a moral obligation."

Cooley, Const. Lim. 358, contains some discussion upon this subject, and the case of Lawrence Ry. Co. v. Mahoning Co. (Comrs.) 35 Ohio St. 1, lays down this rule:

"The legislature cannot create a liability for acts as to which there was no liability when they were committed; but where a remedy exists, the legislature may change it, as well as to acts theretofore as those thereafter done.

"The act of March 7, 1873, which provided a new remedy against those who placed obstructions in public highways, applied as well to existing obstructions as to those subsequently placed therein."

And the case itself presents a very good illustration of the doctrine. I read from the opinion on pages seven and eight:

"The legislature, it has been said, cannot create a liability for acts as to which there was no liability when they were committed. * * * But 'A party has no vested right in a defense based upon an informality not affecting his substantial rights.' Cooley, Const. Lim. (4 ed.) 461. At least, it is perfectly clear that if a liability exists, the form of the remedy may be changed, or the existing provisions supplemented by other legisla-

Kloeppinger v. Grasser.

tive enactments. Such an obstruction as that created in this case is, by the act of 1857 (54 O. L. 130), reenacted in 1877 (74 O. L. 240), declared to be a nuisance, and the person erecting or maintaining it is liable to indictment, chargeable with the expense of removing it, and moreover liable to the suit of any person injured by such nuisance in his health, comfort, property or the enjoyment of his estate.  *  *  *

"It is clear, therefore, that for this obstruction there was, at the time it was created, a remedy provided by law; and we think the general assembly might well provide, as it did by the amendment of 1873, this new and additional remedy, and that the amended act applied to obstructions already created. Nor can the statute of limitations apply to such a case as this, for the reasons stated in the opinion in Little Miami Ry. Co. v. Greene Co. (Comrs.)."

Now, as I have pointed out, the old act contained substantially the same remedy for the subcontractor, but it required that the itemized account should be sworn to. The new act differs from that only in omitting the requirement that the statement shall be sworn to. But even if this were an entirely new remedy given to the subcontractor, we cannot see how this principle underlying the constitutional provision on the subject of retroactive laws can be invoked. The defendant cannot insist that he had a constitutional right to pay his money to the head contractor after it had been earned, rather than to the subcontractor to whom the head contractor had become indebted, even though the subcontractor pursued the methods provided by law for reaching the fund. The law requiring payment to the subcontractor lays no new obligation upon the head contractor and it imposes no new burden upon him. He is not required to pay any more or to pay in a more burdensome way—he is only required to pay the same amount in such a way as to work out a natural equity in favor of the subcontractor to whom the money is due. We do not regard this provision of the statute as remedial in the sense in which the word is used in Sec. 79 Rev. Stat., and, therefore, it may very well apply to the state of facts which then existed, although arising upon contracts theretofore entered into.

But it is said under this new act the plaintiff has no such remedy as he invokes. The law, as it stood before, contained this provision, in Sec. 3201 Rev. Stat.:

"If a head contractor or subcontractor neglect or refuse to pay, within five days after his assent to or adjustment of any claim, the amount thereof, and costs incurred, to the subcontractor or material man, laborer, mechanic, or person furnishing materials the owner, board, officer or clerk or agent thereof, shall pay when due, the whole, or a pro rata amount

thereof as the case may be as above provided out of subsequent payments, and on his failure so to do, within ten days thereafter, the subcontractor or material man, laborer, mechanic or person furnishing material may recover against the owner, in an action for money had or received, when due, the whole or a pro rata amount, as the case may be, of his claim or estimate, not exceeding in any case the balance due to the principal contractor."

Now that gives a specific remedy, by an action at law to recover the amount, in very clear and exact language; but, by the act of April 18, 1902, which modifies a great many of the provisions of the mechanics' lien law, Sec. 3201 is repealed, and there is no corresponding section in the new law, that is to say—there is no section having that number, and there is no provision in the new law in the same language; but we do find in the new law various provisions upon the subject of the remedy of the subcontractor. We find in Sec. 3184 Rev. Stat., see 95 O. L. 209, this provision:

"The owner, part owner, or lessee shall not be liable to the subcontractor, or material man, or laborer for any greater amount than he contracted to pay the original contractor, but the risk of all payments made to the original contractor, after such owner, part owner, or lessees shall have received the notice before mentioned, shall be upon such owner, part owner, or lessee, and no payments made to any contractor after receiving said aforesaid notice shall defeat any lien of any subcontractor, material man, or laborers."

And in Sec. 3194 Rev. Stat., see 95 O. L. 211, is this provision as to the effect of the notice and the failure to dispute the claim:

"And thereupon subsequent payments under the contract shall be applied by such owner, his agent or attorney, pro rata among the lienholders, and all such payments made by the owner, agent or attorney, shall be considered as part payment on said contract between the owner or contractor."

Then Sec. 3195 Rev. Stat., provides specifically for a subcontractor's lien upon the premises. It is urged that these provisions which I have read all pertain to the lien that a subcontractor may obtain, and they are open to that construction, but, in Sec. 3197 Rev. Stat., 95 O. L. 212, we have a provision which we think is not open to that construction, and one that indicates, as we think, the purpose of the legislature to save to the subcontractor the remedy of an action at law, which was given to him under the old law:

"The owner of property on which a lien has been taken under the foregoing sections may notify in writing the owner of a lien or his agent,

or attorney to commence suit thereon; and if he fails to commence the suit within sixty days after receiving such a written notice, the lien shall be null and void; *but nothing herein contained shall prevent the claim from being collected as other claims are collected by law."*

And we think that has the effect of saving to the subcontractor his remedy by an action at law against the head contractor. Entertaining that view of the matter, we hold that the court of common pleas erred in not allowing the plaintiff to introduce his evidence in support of his claim.

It is said that the petition is defective in that it fails to aver that there are no other claims on the fund; but we think that if there are other claims, the defendant might interpose that by way of defense, or by requiring an interpleader to bring in all parties having an interest in the fund.

It is said that the head contractor should have been made a party. The petition avers that the head contractor has surrendered all right to this fund; that he has made an assignment of it to the subcontractor, so that his presence does not appear to be necessary; but, if the defendant still entertains the opinion that the head contractor should be brought in, he can have him brought in by interpleader.

It is said, too, that it appears by the petition that the claim of the plaintiff has been paid because of the payment of the $500 to him and the payment of $1,000 by defendant to Arnsman for the plaintiff. But we do not think the petition is fairly open to that construction. It is quite evident that the pleader does not mean to aver that the $1,000 was paid to one authorized to receive payment for plaintiff. He is simply reciting the fact that the $1,000 should have been paid to plaintiff, but never came into his hands, and that there is still enough money in the hands of Arnsman to discharge his claim. We think the petition states a good cause of action, and on account of the error which we find in the record, the judgment of the court of common pleas will be reversed and the cause remanded.